STATE EX REL *v.* E. G. BUCK.

(*Jackson.* April Term, 1917.)

1. **COUNTIES.** **Officers and agents.** **Ouster act.**

Acts 1907, chapter 545, section 1, provides that in all counties having a population of 36,100 and not over 38,000, etc., the quarterly county court may appoint a county engineer, and subsequent sections provide his duty looking to the construction and keeping in repair of the public roads of the county. Acts 1909, chapter 351, also provides for the appointment of a county engineer by the quarterly county court in such counties, and prescribes his duties, without differing materially from the act of 1907. The statutes do not expressly declare a purpose on the part of the general assembly to create a county office or a public office of any character, and do not make the appointment of a county engineer mandatory or fix the term during which he shall be employed or the compensation which he shall receive. Ouster Act (Public Acts 1915, chapter 11) section 1, provides for the removal for misconduct of persons holding an office of trust or profit under and by virtue of any of the laws of the State of Tennessee, etc. Defendant was employed by the quarterly county court of Madison county as county engineer under a contract which could be terminated by either party on thirty days' notice. *Held,* that the defendant was not a person holding an office of trust or profit within the meaning of the Ouster Act, but was a mere employee under contract with the county; the statute authorizing his appointment being necessary in order that his compensation might become a valid charge against the county. (*Post, pp.* 117, 118.)

Acts cited and construed: Acts 1907, ch. 545, sec. 1; Acts 1915, ch. 11; Acts 1909, ch. 351.

Constitution cited and construed: Act 11, sec. 17.

State ex rel. v. Buck.

1. **COUNTIES.** Officers and agents. Ouster act.

In view of Const. 1870, article 11, section 17, providing that no county office created by the legislature shall be filled otherwise than by the people or the county court, an office of trust or profit, under the laws of Tennessee within the meaning of the Ouster Act (Acts of 1915, chapter 11) may be created by one created by the Constitution or by the act of the general assembly, and the quarterly county court has no power to create such office, though power may be granted to it to fill a county office after the same has been validly created by the legislature. (*Post, pp.* 118-122.)

Cases cited and approved: Jones, Purvis & Co. v. Hobbs et. al., 63 Tenn., 113; Prescott v. Duncan, 126 Tenn., 106.

FROM MADISON.

Appeal from the Chancery Court of Madison County.—J. W. Ross, Chancellor.

W. H. Biggs and R. F. Spragins, for appellant.

Bond & Bond and McCorry & Sneed. for appellee.

Mr. Justice Buchanan delivered the opinion of the Court.

At the threshold of this case we encounter a jurisdictional question which, if decided in favor of appellant, Buck, is determinative of the controversy.

The question is whether he was at the date of the filing of the bill a person holding an office of trust or profit under and by virtue of any of the

laws of the State of Tennessee, within the meaning of chapter 11, Acts of 1915, commonly called the "Ouster Act."

Under pleadings which properly raise the question, the chancellor assumed jurisdiction of the cause, and rendered a final decree purporting to oust Buck from what the decree holds to be the office of county engineer. From this decree Buck appealed, and by one of his assignments of error makes the point that he was not an officer, but only an employee, of the county, and therefore that the chancellor was in error in assuming jurisdiction.

By section 1 of chapter 545, Acts of 1907, it was enacted:

"That in all counties of this State having a population of 36,100, and not over 38,000, according to the federal census of 1900 or any subsequent census, that the quarterly county court of said county is hereby empowered to appoint a county engineer, who shall be an experienced civil engineer who has had experience in highway construction, for such term at such salary as said court may think proper."

By the subsequent sections of said act the duties of said county engineer were prescribed. These are largely supervisory in character, looking to the construction and keeping in repair of the public roads in the county of all classes.

By chapter 351, Acts of 1909, p. 1276, it was enacted:

"That in all counties of this State having a population of (not. less than) 36,100 and not over 38,000 according to the federal census of 1900 or any subsequent census that the quarterly county court of such counties are hereby empowered to appoint a county engineer, who shall be an experienced civil engineer who has had experience in highway construction, for such term and at such salary as said court may think proper."

And by the subsequent sections of said act the duties of said county engineer are prescribed which are similar in character to those required of him by chapter 545, Acts of 1907. Such difference in the details of his duties as may exist under the provisions of the two acts is not material to be noticed in the decision of the question before us.

The acts just mentioned. each have application to the county of Madison.

In the minutes of the quarterly county court of Madison county are found recitals to the effect that appellant, Buck, was elected by that body on January 7, 1913, to serve for three months, on April 7, 1913, to serve for twelve months, on April 6, 1914, to serve for twenty-one months, and, finally, on January 3, 1916, to serve for two years. In said minutes also is found a recital:

"That the county reserves the right to dispense with the service of the engineer at any time on thirty days' notice, and *vice versa,* if the engineer

desires to resign or quit the service of the county, he be required to give the county thirty days' notice.''

On said minutes, of date January 3, 1916, which was the day of the beginning of the two-year term, it is recited:

That appellant, Buck, ''was re-elected county engineer for the ensuing two years on the same terms of contract and provisions for terminating services as of last term.''

Said minutes also contain the recital that the salary of the county engineer was at the time of each appointment fixed at the sum of $150 per month.

Under the foregoing acts applicable to the authority of the quarterly county court of Madison county to appoint a county engineer, and the recitals from the minutes the substance of which is above given, the finding of the decree that appellant, Buck, was a person holding a county office of trust or profit, and therefore amenable to the Ouster Act, was predicated.

By Ouster Act (chapter 11, Pub. Acts 1915) section 1, it is enacted:

''That every person holding any office of trust or profit, under and by virtue of any of the laws of the State of Tennessee, either State, county or municipal office except such officers as are by the Constitution removable only and exclusively by methods other than those provided in this act, who shall knowingly or willfully misconduct himself in office or who

State ex rel. v. Buck.

shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the State of Tennessee, or who shall in any public place be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of gambling or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit his office and shall be ousted from such office in the manner hereinafter provided."

In subsequent sections the act prescribes what the procedure shall be in suits instituted under its provisions. In the sixth section it is provided, in part, as follows:

"The petition and answer shall constitute the only pleadings allowed, and all allegations in the answer shall be deemed controverted, and any and all questions as to the sufficiency of the petition or complaint shall be raised and determined upon the trial of the case."

An office of trust or profit under the laws of Tennessee, within the meaning of the Ouster Act, and under our present Constitution, may be one created by the Constitution, or by an act of the general assembly of the State within its power under the Constitution. The quarterly county court has no power to create such an office, though power may be granted to it to fill a county office after the same has

been validly created by the legislature. See article 11, section 17, Constitution 1870, which reads:

"No county office created by the legislature shall be filled otherwise than by the people or the county court."

No such office as the final decree held appellant, Buck, to be the holder of is created by our Constitution. Therefore, if such an office was in existence when the bill was filed, it must be that it was created by some valid enactment of the general assembly. No other act of that body is referred to or relied on as creating such an office, except the two acts already alluded to (chapter 545, Acts of 1907, and chapter 351 of 1909), and the question therefore narrows down to the query: Did the legislature create a county office by these acts or either of them? For the purpose of answering this question it is proper that we consider them *in pari materia* as one act of legislation. So considered, it is to be noted that the legislation does not declare a purpose on the part of the general assembly to create a county office or a public office of any character. The power which the legislation vests in the quarterly county court is to appoint a county engineer. Such a power was necessary in order that the compensation of the county engineer might become a valid charge or liability against the county, and to that end the legislation prescribed the duties of the county engineer. It does not make his appointment mandatory. It does not fix the term during

which he shall be employed, nor the compensation which he shall receive. We do not say that the failure to declare in express terms the intent to create a county office is conclusive evidence that such intent did not exist. If the intent otherwise appeared, it would suffice; yet the absence of an expression of the intent is strong evidence that it did not exist, because, if it existed, why was it not expressed? It may be conceded that the duties assigned are such as might have been confided to a public officer; yet they were also such as could be well discharged by a mere employee; either was but an agency for the public good, and it was for the legislature to adopt the one or the other as it thought best. In one of our cases this court, speaking of the office of public printer which was created by the legislature, the Constitution making no provision for such an office, said:

"Its term of duration, its duties, and its compensation are prescribed by the legislature, and a bond required for the faithful discharge of its duties. These are all the usual characteristics of an office of public trust, and in section 2 and section 5 of the Code it is expressly denominated an office. Mr. Burrell, on page 257 of his Law Dictionary, says: 'The idea of an office clearly embraces the ideas of tenure, duration, fees or emoluments, rights and powers, as well as that of duty.'"

And the court held the public printer to be an officer of the State and that it was so designated in the law creating the office. See *Jones, Purvis & Co. v. Hobbs et al.*, 63 Tenn. (4 Baxt.), 113. But in the present case we find no such clear indication of the legislative purpose to create a public county office of trust or profit. On the contrary, the present case is more nearly analogous to legislation construed and holding made in another of our cases. *Prescott* v. *Duncan*, 126 Tenn. (18 Cates), 106, 148 S. W., 229. By the eighth section of the act (Priv. Acts 1911, chapter 237) under review in that case it was provided: The board of commissioners are authorized to appoint the ''following officers, whose terms of office shall be at the will and pleasure of the board of commissioners, . . . whose compensation shall be fixed on an annual basis'' and paid in monthly installments. Here the act sets out the titles of the respective appointees, these titles being ten in number, the fifth of which is a jail engineer, at a salary not to exceed $1,500 per annum. Now it is apparent that the indications of a legislative intent to create an office by the express words above set out appears much more clearly in that case than such an intent appears in the present case, and yet this court, in construing the above act, declined to hold that it was the purpose of the legislature to create an office within the meaning of article 11, section 17, of the Constitution, but held that the persons named in the act as officers were mere

appointees and subordinates of the board of commissioners at whose hand each appointee held his position. The court said:

"We think they are employees merely, and that the legislature did not intend to, and in fact did not, create ten county offices to be filled by the commission in the discharge of the various duties conferred upon it."

In the legislation under consideration in the present case, if it had been intended to create the office of county engineer, the general assembly by its own act would, at least, have fixed the tenure, the duration, the fees or emoluments, the rights and powers, as well as the duties of the office. It would not have left these important essentials in the creation of a public office to be provided for by the act of the quarterly county court. On the other hand, intending, as we have no doubt the legislature did, to grant a mere discretionary power to the county court to employ a county engineer, it wisely left it also to the discretion of that body to fix the term and salary of the employee. Therefore, in our opinion, the *status* of appellant, Buck, at the time the present petition was filed was that a mere employee under contract with the county, determinable on thirty days' notice by act of the quarterly county court, and, this being his *status,* the Ouster Act had no application, and the chancellor should have dismissed the

petition, instead of assuming jurisdiction of this controversy.

It results that the final decree appealed from is reversed, and this suit is dismissed at the cost of petitioners and their sureties.