### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION.

## JACKSON, APRIIL TERM, 1920.

STATE *ex rel.* MILLIGAN *et al. v.* JONES.

(*Jackson.*    April Term, 1920.)

1. SCHOOLS AND SCHOOL DISTRICTS. Office of school director is an "office of trust" within Ouster Act.

The office of school director, although not an office of profit, is an "office of trust" within the meaning of the Ouster Act, providing for the removal of State, county, or municipal officers for willful negligence, etc., in view of Shannon's Code, sections 1402, 1417, 1418, 1423, 1428, 1430. (*Post, pp.* 576-579.)

Acts cited and construed: Acts 1915, ch. 11.

Case cited and approved: State v. Buck, 138 Tenn., 112.

Code cited and construed: Secs. 1402, 1417, 1418, 1423, 1428, 1430 (S.).

2. SCHOOLS AND SCHOOL DISTRICTS. Chancellor warranted in ousting school director.

Chancellor was warranted in pronouncing a judgment of ouster against a director of school district, under Acts 1915, chapter 11, where there had been no meeting of the board of directors after director had been elected, and he had been signing the names of

(575)

all the directors to school warrants and delivering them to the parties entitled, had not visited all of the schools as required by law, had failed and neglected to take care of the school property, and had hauled coal from the school grounds and had not returned the same until after he was suspended, notwithstanding the fact that he had no unlawful purpose in appropriating coal belonding to the district, for the Ouster Act has no reference to the intent with which this misfeasance was committed. (*Post, pp.* 579, 580.)

3. **SCHOOLS AND SCHOOL DISTRICTS.** Directors must act together as a board.

The law requires the directors of a school district to act together as a board, and they cannot delegate to each other the performances of duty cast upon them by law. (*Post, p.* 580.)

---

FROM GIBSON.

---

Error to the Chancery Court of Gibson County.—HON. V. H. HOLMES, Chancellor.

W. H. SWIGGART, JR., Assistant Attorney-General, for the State.

HINTON & ROGERS and W. R. LANDRUM, *for* plaintiff, in error.

MR. CHIEF JUSTICE LANSDEN delivered the opinion of the Court.

This is an ouster suit brought by relators against the defendant as a school director. The first assignment of error is that the office of school director is not an office

of trust or profit within the meaning of the Ouster Act.

Chapter 11, Acts of 1915, provides that every person holding any office of trust or profit, under or by virtue of any of the laws of the State of Tennessee, either State, county, or municipal office except such officers as are by the Constitution removable only and exclusively by methods other than those provided in this act, who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the State of Tennessee, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit his office and shall be ousted from such office in the manner hereinafter provided.

Under this assignment the question is presented of whether the defendant is holding any office of trust or profit either State, county, or municipal within the meaning of this act.

The object of the act was to rid the public of unworthy officials, and it should be given a construction which would accomplish this object. A public school director is a necessary and essential part of the public school system of the State. Shannon's Annotated Code, sections 1402, 1417, 1418; 1423, 1428, 1430; *State* v. *Buck,* 138 Tenn., 112, 196 S. W., 142.

An examination of these sections of the Code will show the nature and extent of a school director's duties. It also shows that he is a county official. He is elected by the qualified voters of a district to serve in a particular

school district, but he is an essential part of the county and State school system. He is a district official in one sense and a county and State official in the larger sense. In this view he would fall directly within the terms of the Ouster Act, *supra;* but the word "municipal," as employed in that act, would embrace school directors whether they should be considered district, county, or State officials.

The public school system has developed into a great plan of the State government to educate its citizens and is based upon the thought that an educated citizenry is essential to a free government. The government has undertaken this trust, and for this purpose spends hundreds of thousands of dollars every year. The system is a great system and has many features; all of which may well be said to be essential. Included within this system is the school director, and we must hold that it is an office of the highest trust. It is not an office of profit, and it should not be made so, because usefulness of the office would be lessened if the cupidity of men were aroused over its possession. The motive which men are expected to exercise in seeking it is one of patriotism and disinterestedness. It is none the less an office of trust. The directors have within their control the employment of teachers, the payment of their salaries, the care and custody of school property, and many other things of financial interest, which would be sufficient, standing alone, to declare the office one of trust; but in addition the director has the decision of the character and nature of the school by the selection of teachers and other matters of great moral and spiritual trust. An

examination of the sections of the Code cited will show that it was intended to make the director an important and essential part of the school system.

Under the second and third assignments of error it is said the chancellor was in error in removing defendant from his office and taxing him with the cost. We think the facts found by the chancellor are abundantly supported by the testimony. He found the defendant held an "office of trust" within the meaning of the Ouster Act, that the defendant was elected and qualified as school director in August, 1918, that there has been no meeting of the board of directors since the defendant was elected, that defendant has been signing the names of all of the directors to the school warrants since that time and delivering them to the parties entitled, that he has not visited some of the schools in his district as required by law, and that he had not visited one of the schools but one time, and one of the schools he has never visited or even seen, that he has failed and neglected to take care of the school property as required by law, that he had had coal hauled from the school ground that was the property of the school district, more than a year before the trial, and that he had not returned the coal until after he was suspended from office and that these things were all knowingly done by the defendant.

We think the chancellor was well warranted in pronouncing a judgment of ouster. The defendant had almost ceased to act as a director, and in those things in which he did act he acted unlawfully. We may well ac-

quit him of an unlawful purpose in appropriating the coal which belonged to the district, but we cannot acquit him of the fact that he did so appropriate it. The ouster statute has no reference to the intent with which this misfeasance was committed.

We are of opinion that the law required the directors to act together as a board. They cannot delegate to each other the performances of duty cast upon them by law. The law requires that three shall be elected and each director must exercise his own will and purpose in person. Those who elect him are entitled to this.

The decree of the chancellor is affirmed, with cost.