J. C. Glass *v.* Henry Sloan.

(*Jackson,* April Term, 1955)

Opinion filed June 10, 1955.

Petition to Rehear denied August 2, 1955.

Tipton & Tipton, of Covington, for appellant.

W. A. Shoaf, of Covington, Gwinn & Gwinn, of Memphis, for appellee.

Mr. Justice Burnett delivered the opinion of the Court.

There is another lawsuit from the same court, styled *J. C. Glass* v. *M. E. Overall, et al.,* wherein the identical questions are raised as are raised in the above styled case. It was agreed at the hearing that this opinion would control both lawsuits.

This suit is between rival claimants to the office of Superintendent of Roads of Tipton County and involves

the constitutionality of Chapter 177 of the Private Acts of 1953, which Act is an amendment of the Tipton County Road Law. The bill was filed below by the appellee against the appellant, defendant below, and from a decree overruling the demurrer of the defendant to the original bill the defendant, appellant here, has appealed. The original bill is grounded upon the validity of the 1953 Act above referred to and the demurrers thereto challenged the constitutionality of that Act.

Prior to 1951, the Superintendent of Roads of Tipton County, under the provisions of Sections 8 and 9 of Chapter 120 of the Private Acts of 1943, was clearly a County employee, these Sections of the Act authorizing the County Board of Highway Commissioners to appoint a superintendent of roads, fixed a period of his employment at 2 years, provided for his removal by the Board, and provided that he was, in the performance of the duties of the position, at all times under direction and control of the Board.

The Legislature of 1951 by Chapter 106 of the Private Acts of that year, amended the Tipton County Road Law, Private Acts of 1943 above referred to by striking the two Sections above referred to in relation to the Superintendent, that is, Sections 8 and 9, and inserted in lieu thereof the following:

" 'Section 8. Be it further enacted, That at the regular August election 1952, there shall be elected by the qualified voters of counties to which this Act applies a Superintendent of Roads for said County, *who shall be a man of experience and skill in road building. He shall have charge of all County road equipmment and of the maintenance and upkeep of the roads in said County. His term of office shall be for a period of two years from September 1 next*

*following his election* and until his successor shall be elected and qualified.

" 'Before qualifying he shall execute bond in the sum of $2,000, such bond to be approved by the County Judge and filed in the office, for the faithful performance of his duties. His salary shall be $3,600.00 per annum, payable in equal monthly installments out of the highway and bridge funds of said County.' " (Emphasis supplied.)

It seems to us that under this Act (1951 Private Act just quoted) that the Superintendent of Roads as created by this Act is a County Officer. The underscored portions of the Act clearly show that the Superintendent is here placed with the responsibility of building, repairing and maintaining the roads and is put in complete charge thereof to use his judgment and discretion in doing these things as well as being in charge of the equipment therefor. This Court in *Condon* v. *Maloney,* 108 Tenn. 82, 65 S. W. 871 assumed that the Commissioners named in the Act there in question were County Officers. Another case of import and similarity on the question here under consideration is that of *Prescott* v. *Duncan,* 126 Tenn. 106, 148 S. W. 229. (The first of the cases changing County form of government).

In deciding whether a particular employment is an office within the meaning of the Constitution or statutory provisions, it is necessary that each case be determined by a consideration of the particular facts and circumstances involved; the intention and subject matter of the enactment, the nature of the duties, the method by which they are to be executed, the end to be attained, etc.

The line between the public office and the public employment is sometimes not too clearly marked by judicial decisions. One of the criteria of public office is the right

of the officer to claim the emoluments of said office attached to it by law. Another one of the criteria of public office is the oath required by law of the public officials; (no oath is required by this statute but the general law makes such a requirement, Code Sections 1816, 1822, and would supply such a requirement missing in the local Act under consideration); another the bond required by law of certain public officials. But in determining the question of whether or not this Act under consideration creates an office or employment it is not necessary that all criteria be present, however, it has been held on good authority that tenure, oath, bond, official designation, compensation and dignity of position may be considered along with many other things. See a well considered opinion by the Supreme Court of Missouri to wit: *State ex inf. McKittrick* v. *Bode,* 342 Mo. 162, 113 S. W. (2d) 805. We, so far as we can find, have never had a direct definition given by a court in this State as to what is necessary to constitute a public office as distinguished from an employee. It is true we have had innumerable cases wherein it has been concluded that the party was either a public officer or an employee but the facts of each of those cases were applied to determine which the party was. This Court in *Grindstaff* v. *Carter County,* 152 Tenn. 605, 279 S. W. 1041, 1042, concluded that the Commissioners created by that Act were County officers and used this pertinent language to wit:

"These commissioners are not to expend a particular fund derived from a bond issue, or to construct certain specified roads, but they are to expend from year to year the road funds arising from taxation and automobile registration in building and maintaining the roads of the county, *exercising their*

*judgment and discretion* as to what roads shall be constructed or repaired, and when same shall be done.'' (Emphasis supplied.)

The Superintendent in the instant case is given these very broad powers of using his *discretion* and *judgment*. This Superintendent ''shall have charge of all County road equipment and of the maintenance and upkeep of the roads in said County''. Clearly this language is all inclusive and would supersede any language to the contrary which was applicable to the old road superintendent who was appointed by the Commissioners under the original '43 Act.

■ This 1951 Act, above quoted, does not provide for a single election to be held in August, 1952. It if did provide for a single election such would perpetuate the person elected to the office forever. Clearly such an Act would be unconstitutional. The obvious reading of this Act is to insert the word ''commencing'' at the regular August, 1952 election the person of superintendent is to be elected for each two-year term. Consequently at the next election in 1954 a person would be elected for another two-year term.

The appellee, Glass, was a candidate for Superintendent of Roads elected in August, 1952, qualifying for such office on September 1st, and took office at that date, the beginning of his term of office.

In 1953, and prior to the expiration of Glass's term of office, the Legislature of Tennessee passed Chapter 177 of the Private Acts of 1953, the pertinent portions of which are as follows:

'' 'Section 8. Be it further enacted, That at the regular July Term, 1956, of the Quarterly County Court of any county to which this Act applies, there shall be elected a Superintendent of Roads for said

County who shall be a man of experience and skill in road building and having not less than two years experience in the building, construction ad maintenance of roads. He shall have charge of all County Road equipment and of the maintenance and upkeep of the roads in said County. His term of office shall be for a period of four (4) years from September 1st next following his election and until his successor shall be elected and qualified.

" 'Before qualifying he shall execute bond in the sum of $2,000, such bond to be approved by the County Judge and filed in the office, for the faithful performance of his duties.'

"Section 2. Be it further enacted, That the salary of the Superintendent of Roads for said counties shall be $4200.00 per annum, payable in equal monthly installments out of the highway and bridge funds of said County, beginning April 1, 1953.

"Section 3. Be it further enacted, That the Superintendent of Roads for said County, elected under the provisions of said Chapter 106 of the Private Acts of 1951, shall serve until the election of his successor by the County Court of the County under the provisions of this Act.

"Section 4. Be it further enacted, That the Quarterly County Court of the County shall have power and be authorized to fill any vacancy in the office of the Superintendent of Roads occurring prior to or subsequent to the first election of a Superintendent of Roads July 1, 1956."

As will be seen this new Act provides that at the July Term of 1956 of the Quarterly County Court that court shall elect a Superintendent of Roads for a term of four years commencing September 1, 1956. Sub-Section 3 of

the Act provides that the Superintendent of Roads, that is Glass, who was elected under the 1952 Act on August, 1952 shall hold over as the Superintendent of Roads until his successor is elected by the Quarterly County Court in 1956. Section 4 of the Act provides for the County Court to elect, either before or after 1956, the Superintendent of Roads when there is a vacancy. This Act in substance likewise puts the same duties on the Superintendent of Roads as did the 1951 Act.

In other words, for reasons above stated the Superintendent is still a County official even though he is now elected by the County Court. The obvious contention by the appellant is that the 1953 Act above quoted is unconstitutional because it violates Section 17 of Article 11 of the Constitution, which provides that:

"No county office created by the Legislature shall be filled otherwise than by the people or the County Court."

As we have pointed out and as the Act clearly shows this purported Act, under Section 3 thereof, is an attempt by the Legislature to keep Glass in office from the end of the period in which he was elected in 1952 on through until the Quarterly County Court meets in July, 1956 or passing over the general election of August, 1954. Such cannot be done. We think that it is, at least inferentially, conceded that under the authority of *Condon* v. *Maloney,* 108 Tenn. 82, 65 S. W. 871; *State ex rel. Cummings* v. *Trewhitt,* 113 Tenn. 561, 82 S. W. 480; *Richardson* v. *Young,* 122 Tenn. 471, 125 S. W. 664; *Grindstaff* v. *Carter County,* 152 Tenn. 605, 279 S. W. 1041 and many others, that this provision of the Act or that the Act if the provision cannot be elided and save the Act, that the Act would be clearly unconstitutional as violative of the quoted section of Article 11 of our State Constitution.

■ ■ We realize that it is our duty to sustain the validity of an Act of the Legislature if possible to do so. *Dykes* v. *Hamilton County,* 183 Tenn. 71, 191 S. W. (2d) 155. Realizing this it seems to us that under the doctrine of elision, ably discussed in *Davidson County* v. *Elrod,* 191 Tenn. 109, 232 S. W. (2d) 1, Section 3 of the 1953 Act may be stricken out without in any sense impairing the efficiency of the Act; and this should be done, and the Act preserved. *Jones* v. *City of Memphis,* 101 Tenn. 188, 47 S. W. 138. When we do this we have a situation as follows: The 1951 Act providing for the election by the people of the Superintendent of Roads of Tipton County commencing with the August election of 1952 at which time the appellee, complainant below, Glass was elected for a term beginning September 1, 1952 and extending through August 31, 1954. The appellant, defendant below, Henry Sloan, was the only candidate for the office of Superintendent of Roads of Tipton County in August, 1954 and was elected at that time to that office. Consequently after August 31, 1954 Henry Sloan was the duly elected Superintendent of Roads of Tipton County holding such under the Act of 1951 hereinabove quoted.

The 1953 Act provides, as is shown by the quotation above, that beginning in 1956 with the July Term of the Quarterly County Court that court, instead of the people, will elect a Superintendent of Roads for a period of four years. Under Sub-Section 4 of the 1953 Act if a vacancy should occur why then the County Court would elect. The obvious thing to do to keep the Act as it is is this conclusion, that is, that on September 1, 1954 the defendant, appellant, Henry Sloan was entitled to the office of Road Superintendent of Tipton County and will serve as such until his successor is elected by the County Court

at its July Term, 1956. The one elected, of course, would take office as of September 1, 1956 and hold for four years according to the terms of the Act. In doing this we have maintained the Act and have elided the unconstitutional portions thereof. This seems to us the fair and proper thing to do under a reasonable constitutional construction of these Acts.

The judgment below will be reversed and a decree entered accordingly. The costs of the cause are taxed to the appellee Glass and the sureties on his prosecution bond.

## On Petition to Rehear

The appellee has filed a very forceful and dignified petition to rehear herein. Counsel in this petition has, to a great extent, reargued much that was argued in the original brief as well as orally before this Court. When we first read this petition the writer of this opinion somewhat felt that he had goofed, as the youngsters of today call it. As a result of this feeling the record and the original briefs were sent for and have been again very carefully reread and studied as well as the petition to rehear and the reply and many authorities. After some days study and restudy on this proposition we are convinced more than ever that our original opinion reaches the correct conclusion but probably should be amplified in certain particulars.

In the first place we are convinced more than ever that under the Act in question it was the intention of the Legislature to make the position of "Superintendent of Roads" an office as distinguished from an employee. It seems to us, as an additional reason to what was pointed out heretofore in our original opinion, that had the Legislature not intended to create an office they would

have certainly provided that this "Superintendent of Roads" be named by the Highway Commission as provided under the original Act of 1943 and not be one to be either elected by the people or elected by the County Court.

If we accept the argument of the appellee that under Section 4 of the Act, as quoted in our original opinion, the County Court had a right to elect at the expiration of Glass' term a Superintendent of Roads, we would be in effect saying that this section of the Act is unconstitutional for the same reason as given in the original opinion as to why Section 3 would be. By such an interpretation we would be saying that Glass might stay on in until his successor was elected in July, 1956, by the County Court. Under the authorities in this State, *State ex rel. Gann v. Malone,* 131 Tenn. 149, 159, 174 S. W. 257, and *Conger v. Roy,* 151 Tenn. 30, 267 S. W. 122, and others as cited in our original opinion there was no vacancy in this office as long as Glass remained in there for as said in *State ex rel. Gann v. Malone* [131 Tenn. 149, 174 S. W. 260]:

" 'As far as our investigation has gone, the great weight of authority upholds the view that, wherever the law provides for an incumbent holding over until his successor has been appointed and qualified, there is no vacancy in the office at the expiration of the fixed term.' "

That would be the situation here if we said that the County Court was to elect for the term beginning September 1, 1954. The County Court under the 1953 Act only is authorized to fill a vacancy, there is no vacancy here.

Section 1 of Chapter 177 of the Private Acts of 1953 would not be constitutional if we apply the reasoning of

the appellee, Glass. There would be no election. Glass, elected in 1952 to serve until 1954, would hold over until 1956. By what the Act did would produce an unconstitutional result. The 1951 Act provided for an election of a Superintendent of Roads by the people, in Section 1 thereof, for a term of 2 years. Of course, as we pointed out in the original opinion, at the election 2 years hence another Superintendent of Roads would be elected, or the incumbent re-elected. If we do not preserve this Section, that is, have the election again at the election in 1954 (the August election to take effect on September 1, 1954) then the Legislature would be in effect, without saying anything at all about it, doing an unconstitutional act in keeping one in office beyond the point when an election could be held.

Thus it seems to us in order to make a constitutional Act out of Chapter 177 of the Private Acts of 1953 it is necessary that we insert in the enacting clause of Section 1 these words immediately following ''so that Section 1 of said Chapter 106'' (by inserting the words) *''after September 1, 1954''* ''shall read as follows.'' By thus inserting these words in the enacting clause of Section 1 of Chapter 177 of the 1953 Act, Section 1 of this Act which is copied in full in our original opinion does not do away with Section 1 of Chapter 106 of the Public Acts of 1951 until after the Road Superintendent is reelected in the summer of that year. By doing this we are maintaining the constitutionality of the 1953 Act by having one elected by the people as provided by the 1951 Act.

Chapter 177 of the Private Acts of 1953 frequently in the various sections of this amendment refers to the 1951 Act and enlarges or increases certain things done by Chapter 106 of the Public Acts of 1951. Thus it becomes our duty to read these two together and try in every way

that we can to harmonize them so that the latter Act may have a constitutional effect. In Sutherland Statutory Construction, 3rd Ed., Horack, at Sec. 2014 it is said:

"The bent of the rules of interpretation and construction is to give harmonious operation and effect to all of the acts upon a subject, where such a construction is reasonably possible, even to the extent of superimposing a construction of consistency upon the apparent legislative intent to repeal, where two acts can, in fact, stand together and be given a coterminous operation."

And again in the same work at Section 7215, it is said:

"Statutes regulating the rights of citizens to vote are of great public interest, and, therefore, are given a broad interpretation to secure for the citizen his right to vote and to insure the election of those officers who are the people's choice."

This statement really should have application here. Where we can constitutionally give the people the right to vote and make their selection for the officers that serve them they should be given and have such a right.

This Court speaking through the late Mr. Justice Chambliss in *Southern R. Co.* v. *Rowland,* 152 Tenn. 243, 276 S. W. 638, 639, said:

"* * * it is within the province of the court, whenever necessary to effectuate the legislative intent, to supply language in construing an act, inserting such words and clauses as may reasonably appear to be called for."

The quoted language, of course, is not based on the state of facts to the present situation but it seems to us that the reasoning and logic thereof is equally applicable to a statute when it is necessary to preserve the constitu-

tionality.  Sutherland Statutory Construction, supra, Sec. 4924.

This is not judicial legislation, but is simply a method at arriving at a constitutional legislative intent which has been defectively expressed.  It seems to us that the 1953 Act when applied to the facts here, if given its literal interpretation, would clearly be unconstitutional as violative of Article 11, Section 17 of our Constitution.  When, therefore, by insertion of the words in the enacting clause to the first section herein that the first section would only become effective after September 1, 1954 and by eliding Section 3 for the reasons stated in our original opinion we thus have preserved the Act, Chapter 177 of the Private Acts of 1953, as a constitutional Act.  In addition to preserving the Act as a constitutional act we have preserved the right of the people to vote on the officer of their choice for this position.  Under such circumstances we feel that we have carried out our full judicial duties in the interpretation of this Act.  We have thus carried out the intention of the Legislature.  The Legislature did not intend to enact an unconstitutional act.

For the reasons expressed herein the petition to rehear is denied.