# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 14, 2015 Session

## STATE OF TENNESSEE EX REL LANDLE BYRGE, ET AL. v. NICHOLAS JAY YEAGER

### Direct Appeal from the Chancery Court for Anderson County
### No. 14CH6354     Don R. Ash, Judge

### No. E2014-01996-COA-R3-CV-FILED-JUNE 25, 2015

The petitioners filed this action seeking to remove the respondent from the position of county law director of Anderson County pursuant to Tennessee's ouster law, found at Tennessee Code Annotated section 8-47-101. The respondent filed a motion to dismiss, which the trial court granted after concluding that the position of county law director is not a public office subject to the ouster law. On appeal, the petitioners argue that the trial court erred in concluding that the position of county law director is not a public office. Because the county law director is subject to oversight by an advisory committee that may remove him or her at any time with the subsequent approval of the county legislature, we affirm the ruling of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., and THOMAS R. FRIERSON, II, J., joined.

Gregory Brown, Knoxville, Tennessee, for the appellants, Landle Byrge, Mark DeVol, Ray Hagan, Toby Geren, Barbara Gaspel Gregory, Clyde Cook, Doug Walden, Carnelson V. Terry, John E. Seiber, Larry Ownby, Hal M. Hagan, Phyllis H. Terry, Thomas T. Adams, Jason Stiltner, Virgil L. Rainey, Dennis Pemberton, Charles W. Jackson, Gary L. McLemore, Earl T. McLemore, Jr., John Walker, Darlene Adams, and Tipton J. Garland.

Wade Vance Davies, Knoxville, Tennessee, for the appellee, Nicholas Jay Yeager.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

In 2006, the General Assembly established the Office of County Law Director for Anderson County, Tennessee by Chapter 77 of the Private Acts of 2006 (the "Private Act" or the "Act"). 2006 Tenn. Priv. Acts Ch. 77, § 1. The Act provides that "[t]he office will be managed and supervised exclusively by the county law director."

The Act also established a Legal Services Advisory Committee made up of eleven elected officials of Anderson County.[1] The Act directs the advisory committee to assist in development of the office's policies and procedures and to monitor and provide oversight for the office and its director. The Act provides that the advisory committee will "develop the job description and required qualifications for the law director and staff, and will also develop the selection process for the director's position." The Act provides that the advisory committee will, upon a two-thirds majority vote, select and recommend a candidate for final confirmation by a majority vote of the Anderson County legislative body. The Act provides that the advisory commission may terminate the county law director at any time with a two-thirds majority vote followed by two-thirds subsequent approval of the county legislative body.

The Act also sets forth the following parameters for the role of county law director:

> SECTION 3. The county law director shall devote his or her full-time legal employment to the duties of the Office of the County Law Director and shall not represent any other clients in the practice of law while holding office as the county law director.

> SECTION 4. The law director shall be a licensed Tennessee attorney; graduate of an ABA accredited law school; duly licensed and admitted to practice law in the courts . . . . The Legal Services Advisory Committee is authorized to promulgate and establish additional mandatory job requirements and preferred job requirements for the position . . . .

> SECTION 5. The annual salary of the county law director is hereby established at a minimum floor of ninety percent (90%) of the annual salary paid to the Anderson County General Sessions Court judges and shall be payable out of the general funds of Anderson County . . . . The county law director . . . shall be eligible for all employee benefits offered to other Anderson County employees . . . ; and salary adjustments as authorized and

---

[1] The Act provides that voting members of the Legal Services Advisory Committee shall consist of the following elected officials of Anderson County: county mayor, county clerk, circuit court clerk, highway superintendent, assessor of property, register of deeds, sheriff, trustee, and three members of the county legislative body.

approved by the county legislative body.

SECTION 6. It shall be the duty of the county law director of Anderson County to take the oath of office prescribed for other county officials by the county clerk and appropriate to his or her office . . . .

SECTION 7. The duties of the county law director shall include, but are not limited to, the following:

(a) Represent and render legal advice to the county legislative body and all county officials, including, elected and appointed department heads, employees and duly appointed boards, commissions and committees in matters relating to their official work and duties; and

(b) Represent the county in all litigation, whether the county is suing or being sued in all state or federal courts, administrative boards and commissions; and

(c) To meet with the county legislative body at all regular and special meetings; and

(d) To act as the county's delinquent tax attorney . . . ; and

(e) To draft, and/or approve, contracts, leases, deeds, or other legal instruments to which the county might be a party, or to review same when requested by county officials; and

(f) To provide legal opinions on matters requested by county officials; and

(g) To render opinions with regard to public finance obligations such as notes and bonds; and

(h) To draft policies, procedures, rules and regulations upon the request of county officials, commissions, committees, boards or other governing bodies empowered to consider and/or adopt the same; and

(i) To represent the county mayor in all fee petitions brought by the officials of the various fee offices; and

(j) To monitor and evaluate any and all cases assigned to insurance counsel by the county's insurance carrier; and

(k) To provide annual opinions to auditors regarding pending or threatened claims or litigation, in accordance with standards promulgated by the American Bar Association; and

(l) In general, to act as general counsel for Anderson County and to perform all duties associated with that position.

SECTION 8. County officials should not employ any attorney other than the county law director to represent the county, or such official, unless additional or substitute counsel is approved by the county legislative body . . . .

SECTION 9. The Anderson County Attorney's Office and the position of county attorney are hereby abolished and all private acts related to that position are hereby repealed. The county law director shall have the same power and authority, as conferred and mandated by state law, as Tennessee county attorneys have under general law; including, but not limited to, authority to file suit to abate nuisances, authority to remove unfaithful public officers, and the authority to enforce zoning and building code violations. The county law director shall otherwise act as the county attorney with all powers and duties granted to that position by state law . . . .

SECTION 10. All necessary expenses incurred by the county law director in the discharge of his or her official duties shall be paid by Anderson County. . . .

SECTION 11. The county law director is hereby authorized to employ such staff members as may be necessary to fulfill his or her duties with the approval of the county legislative body and with salaries to be approved by the county legislative body . . . .

SECTION 12. The county legislative body shall provide suitable rooms and/or office space, with the necessary appurtenances and conveniences, for the Office of the County Law Director and staff . . . .

SECTION 13. The county legislative body may employ special counsel when, in its sole discretion, counsel other than, or in addition to, the law director is needed.

SECTION 14. The county law director may be terminated at any time with two-thirds (2/3) majority vote by the Legal Services Advisory Committee and two-thirds (2/3) subsequent approval by the county legislative body at their next regularly scheduled meeting. The county law director will serve at the will of the Legal Services Advisory Committee and the county legislative body.

Nicholas Jay Yeager was appointed the Law Director of Anderson County in September 2006. On June 13, 2014, twenty-two citizens of Anderson County filed an amended petition for ouster against Yeager seeking to remove him from the position of county law director pursuant to Tennessee Code Annotated section 8-47-101. Section 8-47-101, commonly referred to as the "ouster" law, *Edwards v. State ex rel. Kimbrough*, 250 S.W.2d 19, 20 (Tenn. 1952), provides a method for removing individuals from public office who "knowingly or willfully commit misconduct in office, or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state."[2] The ouster law applies to individuals "holding any office of trust or profit." The petitioners alleged that the position of county law director was an "office of trust or

---

[2]Tennessee Code Annotated section 8-47-101 provides:

Every person holding any office of trust or profit, under and by virtue of any of the laws of the state, either state, county, or municipal, except such officers as are by the constitution removable only and exclusively by methods other than those provided in this chapter, who shall knowingly or willfully commit misconduct in office, or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state . . . shall forfeit such office and shall be ousted from such office in the manner hereinafter provided.

profit" within the meaning of the ouster law and alleged sixteen grounds for Yeager's removal from office pursuant to the statute.

On July 11, 2014, Yeager filed a motion to dismiss the petition under Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Yeager asserted that the amended petition should be dismissed because he was an employee rather than a public official and was therefore not subject to removal pursuant to the ouster law. Citing relevant case law and provisions of the Private Act, Yeager argued that the position of county law director lacked certain characteristics common to public offices, such as a definite term of office or a specific salary. Additionally, Yeager pointed out that he was subject to removal at any time by the Legal Services Advisory Committee and the Anderson County Commission. Yeager asserted that, by filing the ouster action, the petitioners merely sought to circumvent the specific procedures set forth in the Private Act.

The petitioners responded that Yeager's analysis of the characteristics common to public offices was irrelevant because the general assembly's intent to create a public office was clearly set out in the Private Act by the declaration that "[t]he Office of County Law Director . . . is hereby created and established . . . ." They argued that consideration of the characteristics common to public offices is only necessary where there is no such indicium of legislative purpose. Alternatively, they argued that even if the general assembly's intent to create a public office was not clear, the position of county law director had enough characteristics common to a public office to qualify. They pointed out that the Private Act set forth numerous duties, powers, and rights of the position and that it set a minimum base salary. They pointed out the attorney-client relationship between the law director and the county, and stressed the importance of trust and confidence in such relationships. They argued that, standing alone, the nature of the position as one requiring great public trust and confidence is sufficient to declare it an office of trust. Finally, they argued that removal under the ouster law was an additional and cumulative remedy and was therefore not precluded by the removal process set out in the Private Act.

After a hearing, the chancery court issued an order granting Yeager's motion to dismiss on September 22, 2014. In part, the court's order stated:

RULING:

10. In the immediate action, Mr. Yaeger [sic] is not elected by the people of Anderson County and not appointed for a specific term. The Act provides for oversight of the position and its duties by the Legal Services Advisory Committee, hiring of any staff and their salaries are to be approved by the county legislature, proof and review of expenses by the

6

county mayor. Additionally, the act does not include a tenure or duration of the office, similarly to the act at issue in *Buck*. Rather, the act specifies the persons responsible for hiring a legal director, a minimum salary, a minimum list of duties, and a means to terminate.

11. In reviewing the terms of this act collectively in the light of those characteristics and terms present in those legislative acts creating a position of public trust, this court finds the legislature did not intend to create an office of public trust for the position of Anderson County Law Director.

12. As this court finds the position of law director is not an office of public trust, this court finds Tennessee Code Annotated § 8-47-101, et. seq., is not applicable to the removal of respondent, and petitioners can prove no set of facts which would entitle them to relief.

THEREFORE, Respondent's Motion to Dismiss is GRANTED. All subsequently set hearings shall be stricken from the court's docket. Plaintiff shall be responsible for all court costs.

The petitioners timely filed a notice of appeal.

## II. ANALYSIS

This appeal arises from the grant of a Rule 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted. Such a motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The motion is therefore resolved "by an examination of the pleadings alone." *Id.* (citations omitted). By filing a motion to dismiss, the defendant "admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action. *Id.* (citations omitted).

A trial court should grant a Rule 12.02(6) motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002) (citing *Trau-Med of America v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)). Making such a determination is a question of law. On appeal, we review the trial court's rulings on issues of law *de novo*, with no presumption of correctness. *Webb*, 346 S.W.3d at 426 (citations omitted).

The petitioners in this case seek to remove Yeager from the position of county law

director under the ouster law. The ouster law provides a method for removing individuals from public office. *See* Tenn. Code Ann. § 8-47-101 (stating that the law applies to "[e]very person holding any office of trust or profit, under and by virtue of any of the laws of the state, either state, county, or municipal . . . ."). It has no application, however, to remove individuals who are merely public employees. *See State ex rel. Harris v. Buck*, 196 S.W. 142, 144 (Tenn. 1917). Accordingly, the dispositive issue in this case is whether Yeager, in holding the position of county law director, was a public officer or whether he was a public employee.

"It is often necessary to determine whether the performance of certain services, or whether a particular position, is an office or a mere employment, or whether a given person is an officer or a mere employee." 3 Eugene McQuillin, *The Law of Municipal Corporations* § 12:59 (3d rev. ed. 2012) (hereinafter "McQuillin"). Nonetheless, "[t]he line between the public office and the public employment is sometimes not too clearly marked by judicial decisions." *Glass v. Sloan*, 281 S.W.2d 397, 398 (Tenn. 1955). There is no single definition of what is necessary to constitute a public officer as distinguished from an employee. In deciding whether a particular position is a public office within the meaning of a particular statutory provision, courts must consider the particular facts and circumstances of each case. *State ex rel. Ross v. Fleming*, 364 S.W.2d 892, 894 (Tenn. 1963).

One of the earliest Tennessee cases to address the issue of whether a particular position was an office subject to the ouster law is *State ex rel. Harris v. Buck*, 196 S.W. 142 (Tenn. 1917). In *Buck*, citizens sought to remove E.G. Buck from the position of county engineer of Madison County using the ouster law. *Id.* at 142. The trial court entered a decree to oust Buck from what it termed the "office of county engineer." *Id.* After examining the legislation that created the position, the Tennessee Supreme Court reversed. *Id.* at 144. The court declared that the dispositive issue was whether, in enacting the legislation that created the position, the general assembly intended to create a public office. *Id.* at 143. As an initial matter, the court noted that "the legislation does not declare a purpose on the part of the general assembly to create a county office or a public office of any character." *Id.* Next, the court noted that the legislation failed to set forth many of the "usual characteristics of an office of public trust," such as its term of duration, its compensation, and a bond required for the faithful discharge of its duties. *Id.* at 143–44 (citing *Jones, Purvis & Co. v. Hobbs*, 63 Tenn. 113, 119 (1874)). The court concluded that:

> "[I]f it had been intended to create the office of county engineer, the General Assembly by its own act would, at least, have fixed the tenure, the duration, the fees or emoluments, the rights and powers, as well as the duties of the office. It would not have left these important essentials in the

8

creation of a public office to be provided for by the act of the quarterly county court."

*Id.* at 144.

Since the supreme court's decision in *Buck*, courts charged with determining whether a particular position is a public office have recognized that there are certain characteristics of a public office that are commonly used as guidelines for judicial analysis. *See e.g.*, *Glass v. Sloan*, 281 S.W.2d 397, 398-99 (Tenn. 1955) ("[I]t has been held on good authority that tenure, oath, bond, official designation, compensation and dignity of position may be considered along with many other things."); *see also* 3 McQuillin § 12:59 ("Among the criteria to be considered . . . are: whether the position was created by law; whether the position was designated as an office; whether the qualifications of the appointee have been prescribed; whether the duties, tenure, salary, bond and oath have been prescribed or required . . . .") (footnotes omitted). However, courts have also recognized the importance of considering more broadly "the intention and subject matter of the enactment, the nature of the duties, the method by which they are to be executed, the end to be attained, etc." *Glass*, 281 S.W.2d at 398.

In this case, consideration of the characteristics common to public office is only minimally helpful. For instance, though the Private Act appears to designate the position as an office in its statement that the county law director "shall not represent any other clients in the practice of law *while holding office* as the county law director," it generally distinguishes between the "Office of the County Law Director" and the "position of county law director." (Emphasis added.) The Act also sets forth minimum qualifications for the position, though it authorizes the Legal Services Advisory Committee to "promulgate and establish additional mandatory job requirements." Similarly, the Act does not set a specific term of office for the position, nor does it provide a fixed salary except to provide for a minimum salary. The Act does set forth the duties of the position and requires the county law director to take an oath of office, but the Act does not have a bond requirement. Thus, while the county law director position does have some of the characteristics of a public office, it lacks others. As these characteristics are not determinative of the issue, we think it useful to consider the nature of the position in light of the purpose of the ouster law.

The purpose of the ouster law is to "rid the public of unworthy officials" and "to improve the public service, and to free the public from an unfit officer." *Comm'rs of Powell-Clinch Util. Dist. v. Util. Mgmt. Review Bd.*, 427 S.W.3d 375, 385 (Tenn. Ct. App. 2013) (quoting *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 198 (Tenn. Ct. App. 2000)). The law reflects the general assembly's deep concerns regarding allegations of misconduct by public officials. *Looper*, 86 S.W.3d at 198. Recognizing the gravity of

9

such allegations, they established special, expedited judicial procedures for the removal of unfit officers. *Id.* These procedures authorize the court to suspend the official pending a final hearing and determination. Tenn. Code Ann. § 8-47-116. They provide that a hearing on a motion to suspend can be held on as little as five days' notice. Tenn. Code Ann. § 8-47-117. They limit the number of pleadings parties are allowed to file, shorten the usual time permitted to answer petitions or complaints, and expressly prohibit continuances by agreement of the parties. Tenn. Code Ann. §§ 8-47-114, 8-47-115, 8-47-119. Additionally, they direct both the trial court and the appellate court to give ouster cases precedence over all other civil and criminal cases. Tenn. Code Ann. §§ 8-47-119, 8-47-125. As the courts have recognized, these procedures demonstrate the legislature's intent to provide a speedy summary method for removing unfit public officials. *State ex rel. Leech v. Wright*, 622 S.W.2d 807, 811 (Tenn. 1981). Without such a mechanism, it is possible that a public official could openly engage in willful misconduct without fear of losing office prior to the expiration of his or her term. Such a situation is certainly untenable. However, that possibility does not exist where, as is the case here, the position in question is subject to oversight by a committee with the power to remove its holder at any time, with or without cause.

In this case, the Private Act created an oversight committee that is capable of removing the county law director at any time, for any reason. The Act provides that the "advisory committee will select and recommend a candidate (for county law director) for final confirmation by majority vote of the Anderson County legislative body." It further provides that "[t]he advisory committee shall monitor and provide oversight to the Office of the County Law Director and its director." Finally, the Act provides that "[t]he county law director may be terminated *at any time*" by a two-thirds vote of the advisory committee and two-thirds subsequent approval by the county legislative body. (Emphasis added.) These provisions, particularly by providing that the law director "will serve at the will of the Legal Services Advisory Committee and the county legislative body," are more indicative of a legislative intent to create an employment position than a public office subject to the ouster law. Accordingly, we agree with the trial court's conclusion that Yeager, in his position as county law director, was a public employee rather than a public official.

This conclusion is supported by other Tennessee cases. In *Glass v. Sloan*, 281 S.W.2d 397, 398-399 (Tenn. 1955), the Tennessee Supreme Court considered whether the superintendent of roads in Tipton County was a public official or merely a public employee. In doing so, the court noted that the position was originally created by the 1943 Private Acts, which authorized the county highway board to appoint a superintendent of roads, fixed a two year period of employment, provided for removal by the board, and provided that the position was, at all times, under the direction and control of the board. *Id.* at 398. The court concluded that under the provisions of the 1943

Private Acts, the superintendent of roads was "clearly a County employee." *Id.* Next, the court examined the 1951 Private Acts, which amended the 1943 Private Acts. *Id.* The court noted that the 1951 Private Acts removed the sections providing for the appointment, oversight, and removal of the superintendent by the board; the 1951 Private Acts replaced those provisions with sections that provided that the superintendent of roads elected by the citizens, granted the superintendent broad powers to allocate funding for road construction and repair, and set a salary and bond requirement for the position. *Id.* Reviewing the amendments made by the 1951 Private Acts, the court declared that "[i]t seems to us that under this Act (1951 Private Act just quoted) that the Superintendent of Roads as created by this Act is a County Officer." *Id.*

In reaching its conclusion, the court in *Glass* relied on the reasoning of *Prescott v. Duncan*, 148 S.W. 229 (Tenn. 1912), an early Tennessee case also relied on by the court in *Buck*. In *Prescott*, the Tennessee Supreme Court reviewed a section of the 1911 Private Acts, which provided that the Shelby County board of commissioners "are authorized to appoint the following 'officers' whose terms of office shall be at the will and pleasure of the board of commissioners." *Id.* at 238. The section also sets out the titles and maximum salaries of the respective positions. *Id.* 238-39. Despite the fact that the act in question characterized the appointees as "officers," the Tennessee Supreme Court concluded that they were "employés merely," and subordinates of the board of commissioners subject to its supervision. *Id.* at 239.

The Tennessee Supreme Court's holdings in *Glass* and *Prescott* are instructive in this case. In both cases, the court concluded that individuals holding positions subject to oversight and removal by a board or commission were employees, rather than public officials. Likewise, the Private Acts in this case provide that the county law director is subject to oversight by the Legal Services Advisory Committee and may terminated at any time by the advisory committee and county legislative body. Additionally, we note that each of these cases preceded the Private Acts that created the county law director position at issue. The general assembly is presumed to know the state of existing case law. *State v. Powers*, 101 S.W.3d 383, 394 (Tenn. 2003). Based on the foregoing, we agree with the trial court's conclusion that Yeager is not a public official subject to removal under the ouster law.

The petitioners argue that, standing alone, the nature of Yeager's position as county law director is sufficient to qualify as him a public official. They emphasize the importance of Yeager's duties in representing and advising county officials and transacting legal business on behalf of the county. They cite the Tennessee Supreme Court's opinion in *State ex rel. Milligan v. Jones*, 224 S.W. 1041, 1042 (Tenn. 1920), in support of their argument. In *Milligan*, citizens filed an ouster action against the director of a school district. *Id.* In holding that the position of school director was a public office,

the court stated that:

> The directors have within their control the employment of teachers, the payment of their salaries, the care and custody of school property, and many other things of financial interest, which would be sufficient, standing alone, to declare the office one of trust; but in addition the director has the decision of the character and nature of the school by the selection of teachers and other matters of great moral and spiritual trust. An examination of the sections of the Code cited will show that it was intended to make the director an important and essential part of the school system.

*Id.* The petitioners argue that, like the director of schools position in *Milligan*, Yeager is charged with matters of great importance and trust in his position as county law director; they argue that his duties and responsibilities standing alone are sufficient to justify a holding that he is a public office. We disagree. Though the nature of Yeager's duties as law director are certainly important, they do not require a holding that his position is a public office. *See Preston,* 148 S.W. at 239 ("The chairman of the county court is authorized by the Code to employ counsel to represent the county. Such counsel would perform legal services for the entire county, but this employment would not make him a county officer."). Moreover, unlike Yeager, the school director in *Milligan* was not subject to oversight of any other individual, board, or committee. We therefore reject this argument.

### III. CONCLUSION

Though the position of county law director has some of the characteristics commonly associated with a public office as opposed to mere employment, we conclude that because the position is subject to the oversight of an advisory committee, which may remove the individual holding the position with the approval of the county legislative body, it is not a public office under the ouster law. We therefore affirm the ruling of the trial court dismissing the petitioners' action. Costs of this appeal are taxed to the petitioners, for which execution may issue.

_____
BRANDON O. GIBSON, JUDGE